* This cause was decided at Fall term, 1845, but omitted to be (reported.)
The bill is filed by George Reid against George Barnhart, Robert Motley, Andrew Hartsell and John Reid, the younger. The case is: That John Reid, the elder, was the owner of a gold mine in the county of Cabarrus, and in November, 1834, he granted permission to his son and sons-in-law (who were the plaintiffs and defendants) (143) and three others to work the mines upon the following terms: They were daily to pay him (the father) one-third part of the gold found, and the residue of each day's gains was to be divided equally *Page 98 
among those who worked on the several days. The son and sons-in-law were themselves to do the work personally, unless they should be kept away at any time by sickness or indispensable business, in which case one so absent should be at liberty to send one of his white family as a hand in his place. The son and sons-in-law agreed to work the mine upon those terms and proceeded to do so accordingly. On 20 November, 1834, the four defendants attended at the mine and went on to work in person, the plaintiff and the three other sons-in-law not being there. But the plaintiff, being necessarily detained at home, sent Arthur Reid, his son, to work in his stead that day, and Arthur worked accordingly, as the plaintiff alleges. Shortly after the operations of the day were begun one of the defendants found a large lump of gold weighing about nine pounds, avoirdupois weight, which, after paying to the father his share, the defendants divided among themselves.
The bill was filed by the plaintiff, claiming from the defendants an equal share of the gold found on that day upon the ground that his son was sent by him as his substitute, as he had a right to do, as he was an able and sufficient hand out of his own family, and at all events, that he had been accepted by the defendants as a hand and had been set to work in his father's place.
The answer admits that Arthur Reid was at the mine on the day mentioned, and at work, but the defendants say he worked by himself and for himself, and not with or for them, and they deny that they did receive him as a hand on account of his father, or that they would have done so, inasmuch as they alleged he was too young to do a man's (144) work.
Upon the point thus in dispute there was much conflict in the depositions, so much so as to induce the Court to direct issues to be tried in the Superior Court of Cabarrus: 1st, whether Arthur Reid was received by the defendants as a hand to work in the stead and lieu of his father before the finding of the piece of gold on 20 November, 1834; and 2d, if he were so received, whether he had been discharged upon the finding of the piece of gold.
On the trial of the issues, Judge Battle presiding, several witnesses were offered by the plaintiff to prove that Arthur Reid was at the mine at work on the day in question, and that he was at one time sent to some distance by one of the defendants (but which is not stated) for an implement used in the mine called a dipper, and that while he was gone the defendant Motley complained "that he stayed too long, and said that Arthur must be smarter or he would send him home, and that George Reid (the plaintiff) should come himself or send a better hand." This was objected to as evidence against the other defendants on the ground that one partner could not receive another person as partner without the *Page 99 
concurrence of his copartners. But it was received by the Court, and the jury found upon that and other evidence both the issues in favor of the plaintiff against all the defendants.
His Honor thereupon stated the case so as to present the question and enable the defendants to move this Court to direct the issues to be tried over again, if the Court should be of opinion that the evidence was not proper against the defendants, and the defendants' counsel made that motion.
We are of opinion that his Honor rightly admitted the evidence. It is not a question about the admission of a stranger into the partnership by one of the partners without consulting his companions, for there is no pretence that Arthur Reid was to become a partner, or entitled even to wages for his labor from the (145) defendants.
The father was the partner and he had become so by agreement with all the defendants, and the only question was, whether he had complied with his contract so as to entitle him to a share of the gains by sending a competent hand in his stead, as provided for on the agreement. The plaintiff says he did, and to establish it he says the defendants themselves accepted the person he sent as a hand for him. It is surely evidence of the fact of acceptance that the young man was engaged openly in the work, and that one of the defendants, from the deference due to his years or superior skill, undertook to direct the operations of this person for the common good; spoke of him as his father's substitute, no one at the time making objection to the hand nor to the acts or declarations of the person thus assuming authority over the hand. Such circumstances tend, certainly, to show that all concerned recognized Arthur as the substitute of his father.
The Court, therefore, is satisfied with the result of the trial. It entitles the plaintiff to the decree he asks, and it must be referred to the Clerk to take an account of the sum due to the plaintiff in the premises and enquire which of the defendants holds the fund.
Decree accordingly.
Cited: Fisher v. Carroll, 46 N.C. 29; Peebles v. Peebles, 63 N.C. 658. *Page 100 
(146)